[Civ. No. 59291. Second Dist., Div. Two. July 30, 1980.]

INSURANCE COMPANY OF NORTH AMERICA, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; GAF CORPORATION, Real Party in Interest.

COUNSEL

O'Melveny & Myers, John G. Niles, Ira M. Feinberg, H. Lee Watson, Phillip R. Kaplan and M. Pilar Luna for Petitioner.

No appearance for Respondent.

Paul, Hastings, Janofsky & Walker, Daniel H. Williams III, Ronald M. Oster, Earl M. Benjamin, Jeanne E. Irving and Todd E. Gordinier for Real Party in Interest.

OPINION

FLEMING, Acting P. J.—Insurance Company of North America (INA), a casualty insurer, seeks a writ of prohibition against the superior court to preserve the confidentiality of its attorney-client communications against discovery by GAF Corporation (GAF). INA is a defendant in a superior court action brought by GAF against INA, INA Corporation, INA Financial Corporation, and others, seeking declaratory and other relief with respect to liability insurance coverage for asbestos-related claims.

In the INA group of affiliated companies, INA Corporation is the parent holding company, and INA Financial Corporation, Life Insurance Company of North America, and INA, are, directly or indirectly, wholly owned subsidiaries. The issue of attorney-client privilege arose under the following circumstances: Some 3,000 actions, 800 of them in Los Angeles County alone, are and have been pending against GAF and other manufacturers and commercial users of asbestos for damages for personal injuries assertedly the result of exposure of workers over substantial periods of time to asbestos fibers. From 1950 to 1975 INA was GAF's products liability insurer, and as a consequence of this and similar coverage for others INA found itself facing substantial liability for asbestos-related claims, whose potential amount, it is suggested, could reach $20 billion. As a consequence of this exposure INA employed the firm of Michael Gallagher in Cleveland, Ohio, as outside counsel to advise it on asbestos-related matters, and it solicited Gallagher's opinion on the extent of coverage of INA's products liability insurance policies with respect to asbestos-related claims against its insureds. On March 11, 1977, Gallagher undertook to report to his client on this and related legal matters at a meeting at INA's home office in Philadelphia, Pennsylvania, attended by eight full-time officers and employees of INA, five outside counsel, and two other persons. At this meeting Gallagher briefed senior management of INA on the nature and dimension of the asbestos litigation, the extent of INA coverage under its policies, its potential liability for asbestos-related claims, and possible initiation of an

action for declaratory judgment. It is the events, memorandums, notes, and conversations of this meeting which GAF seeks to discover.

GAF, while recognizing that communications between attorney and client are ordinarily privileged (Evid. Code, § 954), asserts the privilege does not apply here, because two outsiders were present at the meeting and attorney-client communications in the presence of third persons are not privileged. (*Marshall* v. *Marshall* (1956) 140 Cal.App.2d 475, 480 [295 P.2d 131].) Two issues are presented. The narrow issue is whether the two persons present at the meeting were in truth and in fact outsiders to INA. The broad issue is whether, even if the two were legally unrelated to INA, disclosure to them furthered the interest of the client or was reasonably necessary to accomplish the purpose for which counsel had been consulted.

The two persons present at the conference were Earl McHugh, vice president-law of INA Corporation, attending in his capacity as a legal officer of the parent company; and Donald Heth, president of Life Insurance Company of North America, a wholly owned subsidiary of INA Corporation, attending in his capacity as a member of the reserve committee created by INA Corporation to supervise the reserve policies of its operating subsidiaries. The trial court rejected INA's claim that McHugh and Heth were present at the briefing to further the interest of the client INA in the consultation, and it concluded that their attendance destroyed confidentiality of communication between attorney and client and made Gallagher's legal opinions and advice discoverable. The court took the view that because Gallagher was retained only by INA and not by INA Corporation and Life Insurance Company of North America the presence at the conference with INA's consent of officers of the latter two companies resulted in a waiver by INA of its attorney-client privilege.

For reasons set out below we disagree with the trial court's conclusions, both on the narrow issue and on the broad issue, and we order a writ of prohibition to issue.

I

The Evidence Code (Stats. 1965, ch. 299, § 2) sets out a statutory privilege for attorney-client communication (§ 954) and declares all such communication presumptively confidential (§ 917). A confidential communication is defined in section 952: "As used in this article, 'confi-

dential communication between client and lawyer' means information transmitted between a client and his lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship." ■ It may be seen that under section 952 communication of information by an attorney to a client in the presence of a third person does not destroy the confidentiality of the communication if the third person is "present to further the interest of the client in the consultation." When the third person is present for that purpose, confidentiality of communication is maintained.

A corporate client, like other artificial entities, can only receive communications from its attorney by means of human agency—officers, agents, and employees of the corporation selected by the corporation's directors and officers to act on its behalf. ■ A corporation, like a natural person, is entitled to the full benefit of the attorney-client privilege (*D. I. Chadbourne, Inc.* v. *Superior Court* (1964) 60 Cal.2d 723, 736 [36 Cal.Rptr. 468, 388 P.2d 700]). And a corporation, again like a natural person, is not limited to employment of full-time officers, agents, and employees, but it may avail itself of the services of part-time employees, ad hoc consultants, temporary advisers, and other servants it selects for specific purposes. (Corp. Code, § 207; Lab. Code, §§ 3351, 3357.)

With these general principles in mind we consider the relationship of McHugh and Heth to INA.

McHugh, according to papers submitted in support of the petition, was vice president-law of INA Corporation, the parent holding company of which INA was a wholly owned operating subsidiary. His duties included general supervision of legal affairs for INA Corporation's entire group operation, and general supervision of all major litigation involving INA Corporation and its subsidiaries. His responsibilities covered rendition of legal advice and assistance to the management, executives, and legal departments of various subsidiaries; selection of outside counsel in some cases; assistance and guidance to outside counsel during the course of major litigation; and advice to

senior management on the status of particular litigated matters. Patently, McHugh was a chief legal officer of the INA Corporation enterprise charged with informing himself about important legal problems of the operating subsidiaries and with giving them the benefit of his advice, an attorney who not only advised INA Corporation but its principal subsidiaries as well. In effect, McHugh was a part-time counsel for INA who from time to time gave it legal advice. Since INA Corporation was the parent and INA the subsidiary, legal advice emanating from McHugh undoubtedly carried great weight and persuasiveness and perhaps often took the appearance of a command. Nevertheless, by reason of the separate corporate entities of the parent holding company and its operating subsidiary, INA was not technically required to accept such advice. McHugh's status in relation to INA was that of a staff officer of a higher headquarters whose advice is persuasive but not compulsory on a lower-echelon operating entity. In familiar terms we can identify McHugh as an unpaid legal consultant to INA. And if, as an INA vice president's affidavit seems to suggest, INA Corporation followed the common holding company practice of charging its operating subsidiaries a management fee for services provided by the parent company, then McHugh was not merely an unpaid consultant but one for whose services INA was paying a fee. But whether his services were paid for or not, in either event, McHugh, far from being an outsider at the conference of March 11, 1977, was present in the capacity of legal consultant and adviser to INA. His presence was as much that of an attorney acting on behalf of INA as if he had been a full-time attorney directly carried on INA's payroll.

We turn to Heth, the other person at the conference, identified as president of Life Insurance Company of North America, another wholly owned subsidiary of INA Corporation, and as a member of the reserve committee created by INA Corporation to advise, coordinate, and review reserve policies for its principal operating subsidiaries. Review of reserve policies by the reserve committee served the dual purpose of insuring the financial health of the entire INA group and assuring the officers of the parent holding company that its operating subsidiaries were following sound actuarial practices. But like McHugh, because of the separate corporate existence of INA, neither the reserve committee nor Heth could directly order INA to adopt a particular reserve policy. Technically, all they could do is give advice, and although in overwhelming probability their advice, unless criminal or fraudulent, would be followed, it would remain no more than advice. Hence, the formal status of Heth in relation to INA was that of a part-time expert

consultant and adviser on reserve policies and sound actuarial practices, whose position was equivalent and comparable to that of a full-time expert employed by INA to give actuarial advice. Viewed in this light, Heth's attendance at the conference was that of a temporary employee and consultant to INA present to advise it whether it should modify its reserve policies by reason of Gallagher's legal presentation.

■ We conclude that, factually, there were no outsiders at the meeting of March 11, 1977, that the confidentiality of the proceedings was never breached, that the legal communications remain privileged in that all those in attendance were functioning in the capacity of counsel, officers, agents, or consultants to INA to further the interest of the client INA in the consultation.[1]

## II

We are told that other discovery matters of similar tenor are or may be pending in the underlying cause. For that reason we do not limit our opinion to a factual analysis of the status of McHugh and Heth in relation to INA, but consider the general question whether under California law an officer or employee of a holding or affiliated company can receive legal advice from counsel employed by a wholly owned subsidiary or affiliate without destroying the confidentiality of the attorney-client communication.

■ Our starting premise is that the attorney-client privilege exists to promote the attorney-client relationship by safeguarding the client's confidential disclosures and the attorney's advice. (*San Francisco* v. *Superior Court* (1951) 37 Cal.2d 227, 234-235 [231 P.2d 26, 25 A.L.R.2d 1418].) The privilege is that of the client and not the attorney, and the client must intend that communications be confidential. If the client discloses attorney-client communications to unnecessary third parties, he manifests an intent to waive confidentiality. (Witkin, Cal. Evidence (2d ed. 1966) § 783, p. 729.) The key concept here is need to know. While involvement of an *unnecessary* third person in attorney-client communications destroys confidentiality, involvement of third persons to whom disclosure is reasonably *necessary* to further the purpose of the legal consultation preserves confidentiality of communication. This

---

[1]We also note that INA Corporation as well as INA is a defendant in the underlying action. Codefendants and their counsel are entitled to communicate in confidence with one another on matters of common interest. (See Law Revision Com. comment to Evid. Code, § 952; West's Cal. Evid. Code. (Unann. ed. 1968) p. 200.)

concept was recognized by the California Supreme Court in *D. L. Chadbourne, Inc.* v. *Superior Court* (1964) 60 Cal.2d 723 [36 Cal. Rptr. 468, 388 P.2d 700], where the court noted that when "the client communicates with his attorney in the presence of other persons who have no interest in the matter...he is held to have waived the privilege." (P. 735.) It may also be seen in virtually all instances of waiver, where the third persons present were found either to be strangers to the attorney-client consultation or to possess interests adverse to the client. (*People* v. *Poulin* (1972) 27 Cal.App.3d 54, 64 [103 Cal.Rptr. 623], statement by criminal defendant to his attorney within hearing of court bailiff; *People* v. *Castiel* (1957) 153 Cal.App.2d 653, 659 [315 P.2d 79], court reporter permitted to testify about statement made by defendant to his attorney during a recess; and *Ver Bryck* v. *Luby* (1945) 67 Cal.App.2d 842, 844 [155 P.2d 706], defendant present at conversation between plaintiff and her attorney.) This concept of necessity is incorporated in that part of Evidence Code section 952 which provides that attorney-client communications remain confidential when disclosed to third persons present at the consultation to further the interest of the client or when disclosed to persons "to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted." Of significance is the fact that disclosure may be made to persons not present at the attorney-client consultation, i.e., the third persons need not necessarily participate in the legal consultation.

It is apparent the authors of section 952 intended a comprehensive construction of the attorney-client privilege when they specified that neither (1) disclosures to third persons present to further the interest of the client, nor (2) disclosures to third persons which are reasonably necessary to transmit information or accomplish the purpose for which the attorney has been consulted, destroys confidentiality of communication. Such a comprehensive construction was forthcoming in *Cooke* v. *Superior Court* (1978) 83 Cal.App.3d 582 [147 Cal.Rptr. 915], a proceeding in which a husband sought to retrieve attorney-client communications that had been surreptitiously removed by a household servant and delivered to his wife's attorneys. Counsel for the wife contended the purloined documents were not privileged, because they had been circulated to persons other than the husband and his counsel in the divorce action, including business associates and attorneys for the husband in other matters. The court held such disclosures did not defeat the privilege. "[A]ll of the alleged recipients were either attorneys who represented Mr. Cooke in some capacity, or were members of his family or

business associates who were legitimately kept informed of the progress of a lawsuit that directly involved the business with which they were associated. . . . [*The*] *privilege extends to communications which are intended to be confidential, if they are made to attorneys, to family members, business associates, or agents of the party or his attorneys on matters of joint concern, when disclosure of the communication is reasonably necessary to further the interest of the litigant.*" (P. 588; italics added.)

Other persuasive authority supports the conclusion that no waiver of the attorney-client privilege occurs by reason of disclosure of confidential communications to business associates to whom disclosure is reasonably necessary. In *Duplan Corporation* v. *Deering Milliken, Inc.* (D.S.C. 1975) 397 F.Supp. 1146, patent licensees challenged the claim of attorney-client privilege by the corporate patent owner in respect to legal communications disclosed to the patent owner's corporate subsidiaries. The court found that disclosure to representatives of related or affiliated corporations of communications between a corporate client and its counsel did not waive the attorney-client privilege. "Although an interest of a third party corporation from a commercial standpoint would not establish a sufficient community of interest, the fact that the communications are among formally different corporate entities which are under common ownership or control leads this court to treat such inter-related-corporate communications in the same manner as intra-corporate communications. In the leading case of United States v. United Shoe Machinery Corp., supra, 89 F.Supp. at 359, the court stated, 'For present purposes the client is United Shoe Machinery Corporation and all its subsidiaries and affiliates considered collectively.' Thus, *if a corporation with a legal interest in an attorney-client communication relays it to another related corporation, the attorney-client privilege is not thereby waived.*" (Pp. 1184-85; italics added.)

Analogies may be found in other spheres of the law, for example, the operation of government bureaus and departments. We do not believe the confidentiality of a legal briefing given to the Social Security Administration would be disturbed by the presence at the briefing of a representative of the Department of Health and Human Resources or that the confidentiality of a communication by counsel to the Department of the Army would be breached by the presence at the conference of a representative of the Department of Defense. Even though these government organizations are separate legal entities, a community of interest exists among them sufficient to justify common briefings with-

out loss of confidentiality. Other analogies come to mind. For example, the presence of the sole beneficiary of a trust at a meeting between the trustee and the trustee's counsel relating to trust matters; the presence of the equitable owner of property at a consultation between the legal owner and the latter's counsel about the property; the presence of a ward at a consultation between his guardian and the guardian's counsel—none of these, we believe, would result in waiver of the attorney-client privilege.

We can develop in concrete form some of the ramifications of disclosure of attorney-client communications to business associates by assuming that at bench, because of the importance of the legal questions to be discussed at the briefing of March 11, 1977, the president of INA Corporation decided to attend the meeting himself to receive the benefit of Gallagher's briefing. We will further assume that the president had no direct duties in either counseling the legal departments of operating subsidiaries or recommending sound actuarial practices to their accountants, that he merely wished to acquaint himself as a matter of corporate group policy with a legal problem of great importance to the parent company and the entire INA group. Would his presence at the conference destroy the confidentiality of Gallagher's communication? We think not. In our view the president's attendance at the briefing would fall squarely within the terms of section 952, which preserves the confidentiality of an attorney-client communication when a third person is present to further the interest of the client in the consultation. At bench, the purpose of the consultation was to obtain legal advice about INA's liabilities for asbestos claims under its outstanding insurance contracts. In all probability such legal advice would shape and guide the action to be taken by INA to meet the hazards of the asbestos problem. But INA was not a solitary island in a remote ocean but a member of a large archipelago of wholly owned subsidiaries located in INA Corporation's inland sea. Basic policy and direction on critical problems would ultimately be determined by the parent company. As the court observed in *Duplan Corporation* v. *Deering Milliken* (D.S.C. 1975) 397 F.Supp. 1146, 1164: "The chain of command in military, business, government, and private societies is an accepted pattern of modern civilization." Such being the case, simultaneous delivery of legal advice to a subsidiary client and a controlling parent company, a delivery which facilitates speedy and accurate determination of business policy by the parent, furthers the interest of the client in the consultation. Because in a pragmatic sense the parent company can be viewed as Gallagher's ultimate client, the purpose of the consultation

would be served by permitting counsel to simultaneously communicate with his direct client and with his ultimate client. It is true that INA, the wholly owned subsidiary, is a separate legal entity from INA Corporation, the parent holding company. Yet for purposes of confidential communication under section 952 there is sufficient unity of interest and identity between the parent company and its wholly owned operating subsidiary to make the presence of a representative of the former at a legal briefing for representatives of the latter one which furthers the interest of the client. As the court said in *Duplan Corporation* v. *Deering Milliken, Inc.* (D.S.C. 1975) 397 F.Supp. 1146, 1172: "A community of interest exists among different persons or separate corporations where they have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice. The third parties receiving copies of the communication and claiming a community of interest may be distinct legal entities from the client receiving the legal advice and may be [non-parties] to any anticipated or pending litigation. The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial. . . ."

We note that the Law Revision Commission comment to section 952 specifically declares that a legal communication is confidential even though made in the presence of a parent or a business associate. (West's Cal. Evid. Code (1968) p. 200.) At bench INA Corporation is both parent and business associate of its operating subsidiary, INA.

What we have said in the hypothetical instance of a subsidiary's attorney-client consultation attended by the president of the holding company applies equally to other representatives of the holding company and its affiliates who are present for good business reasons to further the interest of the client (Cf. *Harper & Row Publishers, Inc.* v. *Decker* (7th Cir. 1970) 423 F.2d 487, 491 [9 A.L.R.Fed. 674], affd. (1971) 400 U.S. 348 [22 L.Ed.2d 478, 89 S.Ct. 1273]). ■ Absent some conflict of interest or some evidence of antagonism among entities, disclosure of counsel's legal opinion to holding company and affiliated company officers and employees who need to know this information in order to properly perform their duties is a disclosure which is reasonably necessary to accomplish the purpose for which counsel have been consulted. Hence it is privileged. We conclude, at least in the instance of wholly owned subsidiaries and affiliates, that the presence of a representative of a parent or affiliated company at a legal briefing of a

subsidiary, and vice versa, does not destroy confidentiality of communication between counsel and client.

What we have said so far assumes the physical presence of the holding company president or his business associates at the attorney-client conference in which legal advice was given. But the specific language of Evidence Code, section 952 protects confidentiality of attorney-client communication, even when the communication is transmitted through intermediaries. Personal attendance at the legal briefing may not be necessary to preserve confidentiality of communication. The president could stay in his office, commission a deputy to report back to him on the legal advice given at the conference, and obtain the benefit of Gallagher's confidential advice and opinions through written communications or through the oral report of his deputy. Such relayed communications are likewise protected by section 952, which preserves the confidentiality of disclosures which are reasonably necessary to transmit the information. The same is true of dissemination of legal advice and opinion to those persons to whom such information is reasonably necessary to accomplish the purpose of the legal consultation. Disclosures to such persons remain confidential, even though the recipients have not been briefed by counsel in person. In our view such persons would include all officers and employees of the INA group for whom knowledge of the legal advice sought and given was reasonably necessary for the proper performance of their duties. Consequently, all written or oral communications of legal opinions and advice given to such persons as a consequence of legal consultation of counsel remain confidential.

By way of warning, however, we point out that when the privilege is extended to cover orally relayed attorney-client communications, as section 952 indicates it is proper to do (Cf. *Duplan Corporation* v. *Milliken* (D.S.C. 1975) 397 F.Supp. 1146), it is probable that nice factual questions will arise involving differentiation between legal advice (which is confidential) and discussion of corporate policy (which is not). For example, if an officer of INA reported to an officer of INA Corporation on the legal advice given by Gallagher with respect to asbestos coverage, under section 952 that report would be confidential. But if, after delivery of the report, the two officers undertook to discuss what business policies the corporations should pursue in the light of Gallagher's legal advice, the latter discussion would not be confidential under the attorney-client privilege and would be discoverable. It is apparent that as we move from the legal conference itself and written

reports about the conference proceedings to oral discussions among corporate officers, we approach the suspect field of discussion of corporate policy. The boundary lines between the two fields must be settled by the trier of fact during the course of discovery.

To sum up, we construe section 952 to mean that attorney-client communications in the presence of, or disclosed to, clerks, secretaries, interpreters, physicians, spouses, parents, business associates, or joint clients, when made to further the interest of the client or when reasonably necessary for transmission or accomplishment of the purpose of the consultation, remain privileged. (*San Francisco* v. *Superior Court* (1951) 37 Cal.2d 227, 234-237 [231 P.2d 26, 25 A.L.R.2d 1418]; *Cooke* v. *Superior Court* (1978) 83 Cal.App.3d 582 [147 Cal.Rptr. 915]; *De Los Santos* v. *Superior Court* (1980) 27 Cal.3d 677 [166 Cal. Rptr. 172, 613 P.2d 233].) As part of this general rule, we conclude that an officer or employee of a holding or affiliated company can receive legal advice from counsel employed by a wholly owned subsidiary or affiliate without destroying the confidentiality of the communication and, as applied to this cause, that the transmission of legal opinions and advice given by counsel for INA to representatives of INA Corporation and its affiliates was a disclosure reasonably necessary to accomplish the corporate client's purpose in consulting counsel and was protected from discovery by the attorney-client privilege.

## III

It appears the trial court inadvertently required production of memorandums and notes of a paralegal in Gallagher's law firm present at the briefing of March 11, 1977. Such materials, the work product of Gallagher's law firm, are not discoverable. (Code Civ. Proc. § 2016, subds. (b) and (g).)

Let a writ of prohibition issue prohibiting the superior court from enforcing its order of April 28, 1980, and directing that court to vacate and set aside its order requiring discovery of documents and testimony relating to the proceedings of March 11, 1977. Costs to petitioner.

Compton, J., and Beach, J., concurred.

A petition for a rehearing was denied August 25, 1980, and the petition of real party in interest for a hearing by the Supreme Court was denied September 24, 1980.