[No. B194793. Second Dist., Div. Four. Oct. 11, 2007.]

ZURICH AMERICAN INSURANCE CO., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
WATTS INDUSTRIES, INC., Real Party in Interest.

**1490**

COUNSEL

Selman Breitman, Neil H. Selman, Sheryl W. Leichenger, Kathleen Caswell Vance and Rachel E. Hobbs for Petitioner.

No appearance for Respondent.

Rochefort, Rubalcava & MacCuish, David S. MacCuish and Richard C. Giller for Real Party in Interest.

OPINION

EPSTEIN, P. J.—Zurich American Insurance Co. (Zurich) contends the trial court and the discovery referee whose reports it adopted used the wrong standard in overruling its claim of attorney-client privilege in this discovery dispute with Watts Industries, Inc. (Watts). We agree that the challenged orders employed an overly restrictive definition of the attorney-client privilege, and grant relief on that basis. We decline to consider the privacy argument raised by Zurich for the first time in this court.

## FACTUAL AND PROCEDURAL SUMMARY

Watts admitted many of the allegations of Zurich's petition for mandate. We take much of our factual and procedural summary from those uncontested facts.

The parties have been embroiled in litigation for the last nine years over the underlying actions, *State of Cal. ex rel. Armenta v. James Jones Co.* and *Los Angeles Dept. of Water & Power ex rel Armenta v. James Jones Co.* (collectively, the *Armenta* litigation). The instant action, *Watts Industries, Inc. v. Zurich American Ins. Co.* (Super. Ct. L.A. County, 2004, No. BC245144) was brought by Watts. It pleads various causes of action arising out of Zurich's allegedly bad faith breach of its duty to defend and to provide coverage for Watts in the *Armenta* litigation. Zurich then filed a declaratory relief action against Watts and others, seeking a determination of its rights and duties under the policies. (*Zurich American Ins. Co. v. Watts Industries, Inc.* (Super. Ct. L.A. County, 2006, No. BC326747).) This action was consolidated with the Watts bad faith action. Meanwhile, Zurich instituted arbitration over separate deductible agreements in Illinois.

During discovery in the instant action, Watts requested production of various Zurich documents, including documents from its claims file. Zurich objected, invoking the attorney-client privilege and the attorney work product

doctrine. Through a meet-and-confer process, the parties narrowed their dispute from over 2,000 documents to about 850. Watts moved to compel production, claiming that the documents sought were not protected by the attorney-client privilege or the work product doctrine. Zurich opposed the motion, arguing that some documents were protected and objecting to discovery of documents involving other insureds.

The trial court granted the motion to compel in part, ordering Zurich to produce for in camera inspection documents withheld on the grounds of the attorney-client privilege, the work product doctrine, or the Civil Code section 47 litigation privilege. A further meet-and-confer effort reduced the number of contested documents to 500. Of these, 230 contained reserve or reinsurance documents, as well as documents Zurich contended were protected by the attorney-client privilege and work product doctrine. It is these 230 documents which were addressed in the trial court orders that are the subject of this writ petition.[1]

The discovery dispute was referred to the Honorable Lester E. Olson, retired, for in camera inspection of the documents. It was agreed that the referee would first review some 76 documents identified by Zurich as claim file documents. After a tentative ruling and telephonic hearing, the referee issued a report and recommendations for a court order. The trial court adopted the referee's report and issued the proposed order. We therefore examine the findings of the report in detail.

In paragraph 6 of the report, the referee rejected the broad privilege claimed by Zurich for all internal documents concerning reserves and reinsurance matters. These were described as the "disallowed documents." The referee concluded that "[e]xcept for the items in the claim file that contain actual copies of letters or e-mail communications from outside counsel, or documents that have been created by counsel, or received by counsel, or that contain direct communications from counsel, as indicated in the comment section of the attached listing of documents, the documents are not protected by the attorney-client privilege nor the work product privilege."

The referee recognized that many of the disputed documents "indicate internal litigation plans and strategy with respect to the cases in dispute," but "the attorney-client privilege is limited to communications by counsel to a client, and by a client to counsel. The fact that many of the disputed items contain discussion of legal matters, strategy, and status of the bad faith litigation cannot be used to cloak them with either the attorney-client privilege or the work product privilege for that reason alone."

---

[1] According to the parties, the trial court referee has yet to review or rule on the remaining 270 nonreserve and reinsurance documents.

The referee viewed the Supreme Court's decision in *White v. Western Title Ins. Co.* (1985) 40 Cal.3d 870 [221 Cal.Rptr. 509, 710 P.2d 309] (*White*), to be controlling and supportive of his conclusion that the "disallowed" documents are not privileged. The referee also concluded that Zurich's litigation privilege claim is not recognized in California law. Instead, the only litigation privilege recognized in California is Civil Code section 47 (hereafter section 47), and the disputed documents examined do not fall within the scope of that protection. The referee found that only the attorney-client privilege and work product doctrine apply.

The referee relied on *Insurance Co. of North America v. Superior Court* (1980) 108 Cal.App.3d 758 [166 Cal.Rptr. 880] (*INA*) and *2,022 Ranch v. Superior Court* (2003) 113 Cal.App.4th 1377 [7 Cal.Rptr.3d 197] (*2,022 Ranch*) for his conclusion that documents concerning loss reserves and reinsurance were discoverable.

The trial court adopted the referee's recommendation that Zurich be directed to produce the "disallowed" documents and incorporated the referee's worksheet in its order. Documents marked "sustain" were held not subject to production.

Following this order, the referee issued a second report covering the balance of the reserve and reinsurance documents. He applied the same test for attorney-client privilege that he used in the first report, ruling that only documents "that contain actual copies of letters or e-mail communications from outside counsel, or documents that have been created by counsel, or have been received by counsel, or that contain direct communications from counsel" are protected by the attorney-client privilege. Thus, the privilege applied only to "communications by counsel to a client, and by a client to counsel." As in the first report, the referee concluded that "[t]he fact that many of the disputed items contain discussion of legal matters, strategy, and status of the bad faith litigation cannot be used to cloak them with either the attorney-client privilege or the work product privilege for that reason alone." The referee also repeated his view that *White, supra,* 40 Cal.3d 870, *INA, supra,* 108 Cal.App.3d 758, and *2,022 Ranch, supra,* 113 Cal.App.4th 1377, supported his conclusion that some documents were not privileged.

The parties stipulated that Zurich's further production of documents be stayed pending resolution of this petition, and asked the court to adopt the referee's second report and deem it a final order for purposes of writ review. The trial court issued the requested order.

Zurich then sought a writ of mandate or prohibition from this court, asking that we compel the trial court to vacate its orders compelling production and

to enter a new order denying discovery of what Zurich regarded as attorney-client privileged documents and documents revealing confidential litigation and or settlement strategies, including documents containing reserve and reinsurance information. We also were asked to direct the trial court to examine the remaining 270 disputed documents in conformance with the principles we articulate concerning the attorney-client privilege or right to privacy.

After preliminary opposition and additional briefing, we issued an order to show cause why a peremptory writ of mandate should not issue directing the trial court to vacate its orders and enter a new order determining that the following material is protected from discovery: (1) portions of written internal communications between employees of Zurich that reveal Zurich's evaluation of, or its litigation or settlement strategies concerning, the Watts bad faith action which "transmit or discuss underlying legal advice received by [Zurich] for the purpose of defending against or settling the action"; (2) portions of written communications from Zurich to its reinsurer on the Watts liability policy "that reveal [Zurich's] evaluation of, or its litigation or settlement strategies concerning, the action and that also transmit or discuss underlying legal advice received by [Zurich] for the purpose of defending against or settling the action"; and (3) portions of Zurich's internal "loss reserve" documents that reveal Zurich's "evaluation of, or its litigation or settlement strategies concerning the Watts action and that also quote, summarize or discuss underlying legal advice received by [Zurich] for the purpose of defending against or settling the action." We informed the parties that we were "particularly interested in whether, and to what extent, the attorney-client privilege applies to such information."

## DISCUSSION

### I

Extraordinary review of a discovery order will be granted when a ruling threatens immediate harm, such as loss of a privilege against disclosure, for which there is no other adequate remedy. (*O'Grady v. Superior Court* (2006) 139 Cal.App.4th 1423, 1439 [44 Cal.Rptr.3d 72].) " 'We review discovery orders under the abuse of discretion standard, and where the petitioner seeks relief from a discovery order that may undermine a privilege, we review the trial court's order by way of extraordinary writ. [Citation.]' " (*Tien v. Superior Court* (2006) 139 Cal.App.4th 528, 535 [43 Cal.Rptr.3d 121].) " 'A trial court abuses its discretion when it applies the wrong legal standards applicable to the issue at hand.' (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 85 [87 Cal.Rptr.2d 754].)" (*Doe 2 v. Superior Court* (2005) 132 Cal.App.4th 1504, 1517 [34 Cal.Rptr.3d 458] [abuse of discretion

where trial court applied wrong standard on claim of clergy-penitent privilege, writ relief granted]; see also *Venture Law Group v. Superior Court* (2004) 118 Cal.App.4th 96 [12 Cal.Rptr.3d 656] [writ relief granted where discovery order erroneously ordered attorney to violate attorney-client privilege in answering deposition questions].)

## II

Here, we are asked to decide whether the corporate attorney-client privilege extends to confidential communications between agents of the client regarding legal advice and strategy, in which the corporation's attorneys are not directly involved or which do not include excerpts of direct communications from the attorneys.

The attorney-client "privilege 'has been a hallmark of Anglo-American jurisprudence for almost 400 years. (McCormick, Evidence (2d ed. 1972) § 87, pp. 175–179; 8 Wigmore, Evidence (McNaughton rev., 1961) § 2290, pp. 542–545; *Pritchard [sic] v. U.S.* (6th Cir. 1950) 181 F.2d 326, 328, affd. (1950) 339 U.S. 974 [94 L.Ed. 1380, 70 S.Ct. 1029]; *Baird v. Koerner* (9th Cir. 1960) 279 F.2d 623, 629.) The privilege authorizes a client to refuse to disclose, and to prevent others from disclosing, confidential communications between attorney and client. (Evid. Code, § 950 et seq.) Clearly, the fundamental purpose behind the privilege is to safeguard the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding individual legal matters. [Citation.] In other words, the public policy fostered by the privilege seeks to insure "the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense." (*Baird v. Koerner, supra,* 279 F.2d at p. 629.)' " (*Solin v. O'Melveny & Myers* (2001) 89 Cal.App.4th 451, 456–457 [107 Cal.Rptr.2d 456], fn. omitted, quoting *Mitchell v. Superior Court* (1984) 37 Cal.3d 591, 599 [208 Cal.Rptr. 886, 691 P.2d 642].)

 "Evidentiary privileges are creatures of statute. (Evid. Code, § 911; *Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 373 [20 Cal.Rptr.2d 330, 853 P.2d 496].)" (*Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1129 [69 Cal.Rptr.2d 317, 947 P.2d 279].) California courts are powerless to judicially carve out exceptions. (*Titmas v. Superior Court* (2001) 87 Cal.App.4th 738, 745 [104 Cal.Rptr.2d 803].) Evidence Code section 954 provides that a client has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between the client and lawyer. Evidence Code section 951 defines "client" as a person "who, directly *or through an authorized representative,* consults a lawyer for the purpose of

retaining the lawyer or securing legal service or advice from him in his professional capacity." (Italics added.)

■ "Confidential communication" between client and lawyer is defined in Evidence Code section 952 to mean: "information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship." "The attorney-client privilege covers all forms of communication, including transactional advice and advice in contemplation of threatened litigation, 'so a party should not ordinarily formulate a discovery request seeking "all documents transmitted to responding party's attorney." ' (*Wellpoint Health Networks, Inc. v. Superior Court* (1997) 59 Cal.App.4th 110, 119 [68 Cal.Rptr.2d 844] (*Wellpoint*).)" (*Titmas v. Superior Court, supra*, 87 Cal.App.4th 738, 744.)

■ The fundamental issue in this case is whether corporate communications not directly involving an attorney, but which discuss legal advice, come within this privilege. As we have seen, the discovery referee and trial court adopted a definition of the attorney-client privilege limited to "items in the claim file that contain actual copies of letters or e-mail communications from outside counsel, or documents that have been created by counsel, or received by counsel, or that contain direct communications from counsel, as indicated in the comment section of the attached listing of documents . . . ." This definition is inadequate because it fails to take into account language of Evidence Code section 952 expressly contemplating that confidential communications include information transmitted to persons "to whom disclosure is reasonably necessary for the transmission of the information," and those to whom disclosure is reasonably necessary for "the accomplishment of the purpose for which the lawyer is consulted." Section 952 expressly includes legal opinions and advice given by a lawyer within the definition of confidential communication.

■ "Those 'who are present to further the interest of the client in the consultation' include a spouse, parent, business associate, joint client or any other person 'who may meet with the client and his attorney in regard to a matter of joint concern.' (Cal. Law Revision Com. com. to Evid. Code, § 952, 29B West's Ann. Evid. Code (1966 ed.) pp. 528–529; Deering's Ann. Evid. Code (1966 ed.) p. 444.)" (*Benge v. Superior Court* (1982) 131 Cal.App.3d 336, 346 [182 Cal.Rptr. 275].) California courts have held that "the 'privilege extends to communications which are intended to be confidential, if they are

made to attorneys, to family members, *business associates, or agents of the party* or his attorneys on matters of joint concern, *when disclosure of the communication is reasonably necessary to further the interest of the litigant.'* ([*INA, supra,*] 108 Cal.App.3d 758, 767 . . . , quoting *Cooke v. Superior Court* (1978) 83 Cal.App.3d 582, 588 [147 Cal.Rptr. 915].) 'While involvement of an *unnecessary* third person in attorney-client communications destroys confidentiality, *involvement of third persons to whom disclosure is reasonably necessary to further the purpose of the legal consultation preserves confidentiality of communication.'* ([*INA*], *supra*, 108 Cal.App.3d at p. 765.)" (*OXY Resources California LLC v. Superior Court* (2004) 115 Cal.App.4th 874, 890 [9 Cal.Rptr.3d 621], first & third italics added.)

■ "A corporation is a person whose confidential communications with its attorney are protected by the attorney-client privilege. ([Evid. Code,] § 175; *D.I. Chadbourne, Inc. v. Superior Court* (1964) 60 Cal.2d 723, 732 [36 Cal.Rptr. 468, 388 P.2d 700]; *National Football League Properties, Inc. v. Superior Court* [(1998)] 65 Cal.App.4th [100,] 107 [75 Cal.Rptr.2d 893].)" (*Venture Law Group v. Superior Court, supra*, 118 Cal.App.4th at pp. 102–103.) *D.I. Chadbourne, Inc. v. Superior Court, supra*, 60 Cal.2d 723 (*Chadbourne*) is the landmark California case on corporate attorney-client privilege. Its analysis of the policies underlying the extension of the attorney-client privilege to corporations is instructive.

The Supreme Court recognized that a corporation can speak only through an officer, employee, or some other natural person. "Certainly, this fact should not result in an absolute denial of the privilege, nor should it lead to the conclusion that the privilege attaches to every report or statement made by a corporate agent and furnished to the corporation's attorney." (*Chadbourne, supra*, 60 Cal.2d at p. 732.) "Certainly the public policy behind the attorney-client privilege requires that an artificial person be given equal opportunity with a natural person to communicate with its attorney, within the professional relationship, without fear that its communication will be made public." (*Id.* at p. 736.)

The *Chadbourne* court acknowledged that there are circumstances in which the privilege may be waived by the corporation: "Thus, where the client communicates with his attorney in the presence of other persons who have no interest in the matter, or where he communicates in confidence but later breaches that confidence himself, he is held to have waived the privilege (*McKnew* v. *Superior Court* [(1943)] 23 Cal.2d 58 [142 P.2d 1]; *Marshall* v. *Marshall* [(1956)] 140 Cal.App.2d 475 [295 P.2d 131], and cases cited at p. 480)." (*Chadbourne, supra*, 60 Cal.2d at p. 735.) But it cautioned: "Of course, *this does not mean that the privilege is waived simply because the communication was made through an agent of the client or of the attorney* [citation]." (*Chadbourne*, at p. 735, italics added.)

In *Chadbourne*, a husband and wife sued when the wife suffered a fall on a sidewalk which she claimed was caused by the negligence of Chadbourne. A witness who had performed work on the sidewalk gave a statement to an investigator of the defendant's insurer about the accident, and that statement was transmitted to the attorney for the defendant. The Supreme Court recognized the problem inherent when communications are passed through a corporation and its agents: "[W]here, as here, there was not a direct chain of communication, we must ask ourselves to what extent the corporation should be allowed to disseminate the 'privileged' information and still claim confidentiality." (*Chadbourne, supra*, 60 Cal.2d at p. 735.)

The *Chadbourne* court identified 11 principles governing corporate attorney-client privilege in the context of an employee's statement regarding circumstances giving rise to litigation against the employer. Principle 8 is that: "For such purpose an insurance company with which the employer carries indemnity insurance, and its duly appointed agents, are agents of the employer corporation; but *the extent to which this doctrine may be carried, and the number of hands through which the communication may travel without losing confidentiality must always depend on reason and the particular facts of the case . . . .*" (*Chadbourne, supra*, 60 Cal.2d at p. 737, italics added.) Principle 9 states: "And *in all corporate employer-employee situations it must be borne in mind that it is the intent of the person from whom the information emanates that originally governs its confidentiality (and hence its privilege)*; thus where the employee who has not been expressly directed by his employer to make a statement, does not know that his statement is sought on a confidential basis (or knowing that fact does not intend it to be confidential), the intent of the party receiving and transmitting that statement cannot control the question of privilege . . . ." (*Id.* at pp. 737–738, italics added.)

The California Supreme Court also has cited *Upjohn Co. v. United States* (1981) 449 U.S. 383 [66 L.Ed.2d 584, 101 S.Ct. 677] (*Upjohn*) in discussing the purpose of the privilege. (*Roberts v. City of Palmdale, supra*, 5 Cal.4th at p. 380.) In *Upjohn*, the United States Supreme Court reiterated its view that the privilege " 'rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out.' " (*Upjohn*, at p. 389, quoting *Trammel v. United States* (1980) 445 U.S. 40, 51 [63 L.Ed.2d 186, 100 S.Ct. 906].) The court recognized that in a corporate setting, the attorney-client privilege may extend to communications involving middle- and lower-level employees: "In the case of the individual client the provider of information and the person who acts on the lawyer's advice are one and the same. In the corporate context, however, it will frequently be employees beyond the control group as defined by the court below—'officers and agents . . .

responsible for directing [the company's] actions in response to legal advice'—who will possess the information needed by the corporation's lawyers. Middle-level—and indeed lower-level—employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties." (*Upjohn, supra,* 449 U.S. at p. 391.)

 The *Upjohn* court also acknowledged the importance of legal advice to corporate employees at all levels: "The attorney's advice will also frequently be more significant to noncontrol group members than to those who officially sanction the advice, and the control group test makes it more difficult to convey full and frank legal advice to the employees who will put into effect the client corporation's policy. See, *e. g., Duplan Corp.* v. *Deering Milliken, Inc.,* 397 F.Supp. 1146, 1164 (SC 1974) ('After the lawyer forms his or her opinion, it is of no immediate benefit to the Chairman of the Board or the President. It must be given to the corporate personnel who will apply it')." (*Upjohn, supra,* 449 U.S. at p. 392.)

It follows that in order to implement the advice of lawyers, the advice must be communicated to others within the corporation. It is neither practical nor efficient to require that every corporate employee charged with implementing legal advice given by counsel for the corporation must directly meet with counsel or see verbatim excerpts of the legal advice given. But that is what the approach adopted by the referee and trial court would require in light of the narrow construction of Evidence Code section 952 they adopted.

The *Upjohn* court rejected an argument that a wider application of attorney-client privilege in a corporate setting would create a broad " 'zone of silence' " over corporate affairs. The privilege only protects disclosure of communications, it does not protect disclosure of the underlying facts by those who communicated with the attorney. (*Upjohn, supra,* 449 U.S. at p. 395.)

In *State Farm Fire & Casualty Co. v. Superior Court* (1997) 54 Cal.App.4th 625 [62 Cal.Rptr.2d 834], we considered application of the attorney-client privilege in a coverage dispute between homeowners and their insurer. On reconsideration of a motion for summary judgment, the homeowners submitted two declarations by a former employee of the insurer. She disclosed in-house litigation strategy in connection with document disclosure and witness preparation; and she reiterated conversations with other State Farm employees and inside and outside counsel relating to discovery and litigation strategy. The former employee had worked in a unit charged with providing

liaison with the insurer's outside counsel. Her responsibilities included evaluating bad faith claims, responding to discovery, monitoring litigation, and advising the company and outside counsel as to which company employees would be appropriate witnesses at deposition or trial. These duties included communicating with outside counsel and other employees of the insurer concerning the litigation at issue. (*Id.* at p. 632.)

The plaintiffs sought discovery of documents reflecting the insurer's practices in handling applications for insurance and claims for coverage. We concluded that to the extent the former employee had knowledge about the practices and procedures of State Farm, or the existence of claims manuals and other documents utilized in the normal operation of the business, the information was not privileged. Portions of the former employee's declarations contained material that was within the scope of the attorney-client privilege because they reflected communications with counsel. (*State Farm Fire & Casualty Co. v. Superior Court, supra*, 54 Cal.App.4th at pp. 642–643.) In addition, we concluded that portions of the declaration describing witness preparation meetings involving outside counsel, a consultant, the witness, and a member or members of the insurer's litigation unit were within the attorney-client privilege. (*Ibid.*; see also *Lipton v. Superior Court* (1996) 48 Cal.App.4th 1599, 1618–1620 [56 Cal.Rptr.2d 341] [attorney-client privilege may preclude discovery of loss reserve and reinsurance documents even if relevant].)

The American Law Institute also recognizes the need for corporate employees to have access to privileged material in order to implement legal advice. Section 73 of the Restatement Third of Law Governing Lawyers (Restatement) provides: "When a client is a corporation. . . . the attorney-client privilege extends to a communication that: [¶] (1) otherwise qualifies as privileged under §§ 68–72; [¶] (2) is between an agent of the organization and a privileged person as defined in § 70; [¶] (3) concerns a legal matter of interest to the organization; and [¶] (4) is disclosed only to: [¶] (a) privileged persons as defined in § 70; and [¶] (b) *other agents of the organization who reasonably need to know of the communication in order to act for the organization.*" (Italics added.) The Restatement employs a broad definition of "Privileged Persons": "Privileged persons within the meaning of § 68 are the client (including a prospective client), the client's lawyer, agents of either who facilitate communications between them, and agents of the lawyer who facilitate the representation." (*Id.*, § 70.) Comment f to section 70 explains that a client's confidential agent for communication is determined by examining a number of factors, including "the client's need for the third person's presence *to communicate effectively with the lawyer or to understand and act upon the lawyer's advice.*" (*Id.*, § 70, com. f, p. 538, italics added.)

Comment g to section 73 of the Restatement addresses application of the privilege to communications involving corporate personnel: "The need-to-know limitation of Subsection (4)(b) permits disclosing privileged communications to other agents of the organization who reasonably need to know of the privileged communication in order to act for the organization in the matter. *Those agents include persons who are responsible for accepting or rejecting a lawyer's advice on behalf of the organization or for acting on legal assistance, such as general legal advice, provided by the lawyer. Access of such persons to privileged communications is not limited to direct exchange with the lawyer.* A lawyer may be required to take steps assuring that attorney-client communications will be disseminated only among privileged persons who have a need to know. *Persons defined in Subsection (4)(b) may be apprised of privileged communications after they have been made, as by examining records of privileged communications previously made, in order to conduct the affairs of the organization in light of the legal services provided.*" (Italics added.)

An illustration to this comment addresses the situation presented here, where corporate employees are asked to act on legal advice. "1. Lawyer for Organization makes a confidential report to President of Organization, describing Organization's contractual relationship with Supplier, and advising that Organization's contract with Supplier could be terminated without liability. President sends a confidential memorandum to Manager, Organization's purchasing manager, asking whether termination of the contract would nonetheless be inappropriate for business reasons. *Because Manager's response would reasonably depend on several aspects of Lawyer's advice, Manager would have need to know the justifying reason for Lawyer's advice that the contract could be terminated. Lawyer's report to President remains privileged notwithstanding that President shared it with Manager.*" (Rest.3d Law Governing Lawyers, § 73, com. g, illus. 1, pp. 562–563, italics added; see also *id.*, § 134, com. f, at p. 408 ["Whether or not such a relationship exists, communications between the lawyer and representatives of the insurer concerning such matters as progress reports, case evaluations, and settlement should be regarded as privileged and otherwise immune from discovery by the claimant or another party to the proceeding."].)

As we have seen, the referee relied upon *INA, supra,* 108 Cal.App.3d 758 and *2,022 Ranch, supra,* 113 Cal.App.4th 1377, to support his conclusion that certain documents were not privileged. The court specifically cited the discussion in *INA* distinguishing between confidential legal advice and unprotected discussions of corporate policy. These cases do not resolve the privilege issue here and do not support the standard applied by the trial court.

In *INA*, an insured sued its casualty insurer, seeking declaratory and other relief regarding coverage for asbestos-related claims. The insurer sought a

writ of prohibition to preserve the confidentiality of attorney-client communications against discovery by the insured. Outside counsel for the insurer reported on coverage issues at a meeting at INA's home office, attended by eight full-time INA officers and employees, five outside counsel, and two "outsiders." The insured argued that the attorney-client privilege did not apply because (1) two outsiders were present at the meeting; and (2) attorney-client communications in the presence of third persons are not privileged. The two "outsiders" present at the meeting were McHugh, a vice-president-law of the INA corporation (the parent holding company) and Heth (president of a wholly owned subsidiary) who was attending as a member of the reserve committee which supervised the reserve policies of INA's subsidiaries.

The appellate court disagreed with the trial court's ruling that since McHugh and Heth were not present to further the interests of INA, their presence destroyed the confidentiality of the communication and opened the attorney's legal advice to discovery. It held that McHugh was present in the capacity of legal consultant and adviser to INA, acting on behalf of INA. (*INA, supra*, 108 Cal.App.3d. at p. 764.) Heth was described as a part-time expert consultant and adviser on reserve policies and sound actuarial practices, equivalent to an expert employed to give actuarial advice. He was found not to be an outsider. Based on these conclusions, the court held that the confidentiality of the meeting was not breached and that the legal communications remained privileged. (*Id.* at p. 765.)

The *INA* court reasoned that involvement of third persons to whom disclosure is reasonably necessary to further the purpose of the legal consultation does not destroy the confidentiality of the communication. (*INA, supra*, 108 Cal.App.3d at p. 765, citing *Chadbourne, supra*, 60 Cal.2d 723; Evid. Code, § 952.) Significantly, the court pointed out that it is not necessary that the third person participate in the legal consultation, and hence he or she need not be present when the advice was given. (*INA, supra*, 108 Cal.App.3d at p. 765.) It held that "[a]bsent some conflict of interest or some evidence of antagonism among entities, disclosure of counsel's legal opinion to holding company and affiliated company officers and employees who need to know this information in order to properly perform their duties is a disclosure which is reasonably necessary to accomplish the purpose for which counsel have been consulted. Hence it is privileged." (*Id.* at p. 769.)

The court concluded: "To sum up, we construe section 952 to mean that attorney-client communications in the presence of, or disclosed to, clerks, secretaries, interpreters, physicians, spouses, parents, business associates, or joint clients, when made to further the interest of the client or when reasonably necessary for transmission or accomplishment of the purpose of the consultation, remain privileged. [Citations.]" (*INA, supra*, 108 Cal.App.3d at p. 771.)

The *INA* opinion added a statement that distinguished between legal advice, which is privileged, and discussion of corporate policy, which is not: "By way of warning, however, we point out that when the privilege is extended to cover orally relayed attorney-client communications, as section 952 indicates it is proper to do [citation], it is probable that nice factual questions will arise involving differentiation between legal advice (which is confidential) and discussion of corporate policy (which is not). For example, if an officer of INA reported to an officer of INA Corporation on the legal advice given by [counsel] with respect to asbestos coverage, under section 952 that report would be confidential. But if, after delivery of the report, the two officers undertook to discuss what business policies the corporations should pursue in the light of [counsel's] legal advice, the latter discussion would not be confidential under the attorney-client privilege and would be discoverable." (*INA, supra,* 108 Cal.App.3d at p. 770.) The referee relied on this dictum to support his conclusion about the restricted application of the privilege.

Aside from the fact that the statement is not a holding, it does not resolve the question presented here, which is whether the documents discuss legal advice from counsel. If they do not, there is no privilege. If legal advice is discussed or contained in the communication between Zurich employees, then to that extent, it is presumptively privileged. A communication reflecting a discussion of litigation strategy which expresses that the strategy is in response to advice of counsel would come within the privilege.

The report of the referee adopted by the trial court also cited *2,022 Ranch, supra,* 113 Cal.App.4th 1377. That was a bad faith action in which the appellate court held that evidence reflecting factual investigation of the insured's claim was subject to discovery, even though the in-house claims adjusters also were licensed attorneys. But it ordered the trial court to analyze each requested document to determine whether it was subject to attorney-client privilege or work product doctrine. The court concluded: "However, not everything in the insurer's claims file is discoverable. Upon timely objection or motion for protective order, *privileged information* (e.g., attorney-client communications or attorney work product) is protected from discovery. Application of the privilege must generally be determined by the court on a document-by-document and issue-by-issue basis. [Citation.]" (*Id.* at p. 1397.) We have no problem with this approach, but find nothing in it that restricts the privilege as the referee and trial court would do.

 The report of the referee also relied upon *White, supra,* 40 Cal.3d 870, which he found controlling and supportive of the conclusion that the "disallowed" documents are not privileged. *White* dealt with admissibility of evidence at trial rather than the permissible scope of discovery, a distinction

Watts argues works in its favor since the scope of discovery is broader than the rules governing admissibility at trial. The court held that although offers of compromise were inadmissible to prove liability on the plaintiff's original causes of action, they may be admissible to prove liability for breach of the covenant of good faith and fair dealing. (*Id.* at p. 889.) It held that section 47, subdivision (2), the litigation privilege, did not bar their admission to establish bad faith. (*White,* at p. 888.) *White* did not address the attorney-client privilege, and thus does not inform our discussion of that point. " 'It is axiomatic that cases are not authority for propositions not considered.' [Citation.]" (*Acosta v. SI Corp.* (2005) 129 Cal.App.4th 1370, 1379 [29 Cal.Rptr.3d 306].)

 In light of these principles, we conclude that the trial court used an overly restrictive standard for application of the attorney-client privilege, and that writ relief is warranted. We provide the following guidelines for the use of the trial court and discovery referee on remand.

The first relevant inquiry is whether the document contains a discussion of legal advice or strategy of counsel for Zurich. Evidence Code section 952 provides that a "confidential communication" "includes a legal opinion formed and the advice given by the lawyer in the course of that relationship."

If it is determined that the document reflects legal advice or opinions and is thus privileged, the court must determine whether Zurich waived the privilege by distributing the advice within the corporation. Evidence Code section 952 extends the privilege to confidential communications shared with "those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted . . . ." The disputed documents must be reviewed to determine whether the Zurich employees to whom legal advice was relayed come within this broad definition. (See *INA, supra,* 108 Cal.App.3d 767; *F.T.C. v. GlaxoSmithKline* (D.C. Cir. 2002) 352 U.S. App.D.C. 343 [294 F.3d 141, 147].) As the *INA* court reasoned: "The key concept here is need to know. While involvement of an *unnecessary* third person in attorney-client communications destroys confidentiality, involvement of third persons to whom disclosure is reasonably *necessary* to further the purpose of the legal consultation preserves confidentiality of communication." (*INA,* at p. 765.) The relay of legal advice to corporate personnel not present at the attorney-client consultation was addressed by the *INA* court. "[D]isclosure may be made to persons not present at the attorney-client consultation, i.e., the third persons need not necessarily participate in the legal consultation." (*Id.* at p. 766.)

On remand, the court must determine whether the Zurich employees with whom the advice of legal counsel was shared come within these principles. If

so, the document is privileged if there is a showing that it was to be treated as confidential. (Evid. Code, § 952.) If not, the document is subject to discovery.

■ There are additional relevant limitations on the attorney-client privilege. It is established that otherwise routine, nonprivileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is "copied in" on correspondence or memoranda. (*Doe 2 v. Superior Court, supra,* 132 Cal.App.4th at pp. 1521–1522 [document not privileged at inception cannot be made privileged by subsequent delivery to counsel]; *Wellpoint Health Networks, Inc. v. Superior Court, supra,* 59 Cal.App.4th at p. 119 [same].) In addition, Zurich may not shield facts, as opposed to communications, from discovery. Any relevant fact may not be withheld merely because it was incorporated into a communication involving an attorney. (See *Upjohn, supra,* 449 U.S. at pp. 395–396; *Triple A Machine Shop, Inc. v. State of California* (1989) 213 Cal.App.3d 131, 143 [261 Cal.Rptr. 493].) In addition, "It is settled that the attorney-client privilege is inapplicable where the attorney merely acts as a negotiator for the client, gives business advice or otherwise acts as a business agent. (*Aetna Casualty & Surety Co.* v. *Superior Court* (1984) 153 Cal.App.3d 467, 475 [200 Cal.Rptr. 471] and cases cited therein.)" (*Chicago Title Ins. Co. v. Superior Court* (1985) 174 Cal.App.3d 1142, 1151 [220 Cal.Rptr. 507].)[2]

### III

For the first time in support of its writ petition, Zurich asserts a federal constitutional right to privacy in the subject documents. Watts responds that Zurich has no such privacy right, and that the issue was forfeited by failing to present it to the trial court.

Zurich acknowledges that corporations do not have a right to privacy under article I, section 1 of the California Constitution (*Roberts v. Gulf Oil Corp.* (1983) 147 Cal.App.3d 770, 795 [195 Cal.Rptr. 393]), but claims a privacy right under the federal Constitution.

General references to the confidentiality of the disputed documents made by counsel for Zurich did not squarely present the privacy issue to the trial court, as Zurich now claims. Neither the referee nor the trial court addressed corporate privacy rights. While we recognize there are serious questions as to the application of a federal right of privacy to corporations (see, e.g.,

---

[2] Since we have concluded that the trial court or referee must conduct a new in camera review of the disputed documents, we deny the renewed motion by Zurich to file additional documents under seal as unnecessary to resolution of this writ petition.

*Roberts v. Gulf Oil Corp., supra,* 147 Cal.App.3d 770, 771; *Connecticut Indemnity Co. v. Superior Court* (2000) 23 Cal.4th 807, 817 [98 Cal.Rptr.2d 221, 3 P.3d 868]), we follow the approach adopted by the court in *Connecticut Indemnity Co. v. Superior Court,* and decline to address the merits of the issue in this case, both in light of our conclusion about application of the attorney-client privilege and because it was not presented to the trial court.

## DISPOSITION

Let a writ of mandate issue, directing the trial court to vacate its orders of September 12, 2006, and October 12, 2006, and to conduct a new review of the disputed documents applying the principles related to the attorney-client privilege expressed in this opinion. Each side is to bear its own costs.

Willhite, J., and Manella, J., concurred.