Filed 1/22/26

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| IMHOTEP MUSTAQEEM, | D085750 |
| Appellant, | (Super. Ct. No. 24CU007380C) |
| v. | |
| CITY OF SAN DIEGO, | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Carolyn M. Caietti, Judge.  Reversed and remanded.

JD Graham Legal and Jeremiah Graham for Appellant.

Heather Ferbert, City Attorney, M. Travis Phelps, Assistant City Attorney, and Manuel Arambula, Deputy City Attorney for Respondent.

Imhotep Mustaqeem appeals from an order denying his request for a preliminary injunction.  Mustaqeem is a licensed sidewalk vendor who has supported his family by selling packaged snacks outside Petco Park in San Diego since 2009.  In 2022, the City of San Diego (the City) enacted a new set of ordinances that regulate sidewalk vending within the City.  Mustaqeem received a series of citations based on the new ordinances in June and July, 2024 and, on two separate occasions in July, the City impounded his product, along with at least one envelope of money from his sales.

Mustaqeem filed a verified petition for writ of mandate and complaint for injunctive and declaratory relief against the City, asserting the City's sidewalk vending regulations conflict with state laws enacted in 2018 to protect sidewalk vendors. Mustaqeem then moved for a preliminary injunction barring the City from enforcing certain provisions of the municipal code. The trial court acknowledged the disputed regulations have a "potential negative impact on [Mustaqeem's] livelihood," but denied the request for preliminary injunction based, in part, on its finding that there was a "minimal probability of success on the merits."

Shortly before oral argument on this appeal, counsel informed this court that the trial court may issue a final decision on the merits of Mustaqeem's petition and complaint in the coming weeks, which would moot any preliminary injunction issued as a result of the present appeal. We recognize that the record before the trial court is now more complete, and that the trial court is entitled to deference in making factual findings relevant to any such final decision based on that record. At the same time, though, we are also cognizant of the fact that some of the issues raised in the present appeal present legal questions of statutory interpretation, which are both subject to de novo review and capable of repetition. At oral argument, counsel for both parties indicated a preference for resolution of these issues by this court at this juncture.

Addressing those legal issues, we conclude that at least two of the City's sidewalk vending regulations—namely regulations that purport to allow the impoundment of Mustaqeem's items and that restrict vending operating hours beyond those of other area businesses—are in direct conflict with the state law on their face, and that the trial court did not adequately consider those specific conflicts in its ruling on the preliminary injunction.

2

As to questions implicating the broader impact of the regulations, we defer to the trial court's factual findings, based on the current state of the record. Accordingly, we reverse the trial court's denial of the preliminary injunction and remand the matter for further proceedings consistent with the analysis set forth herein.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Public sidewalks, particularly in business districts, are a traditional venue for selling newspapers and other wares, but cities also have a long-recognized interest in placing restrictions on the use of public sidewalks "to promote public safety," often spurring litigation over the balance between vendors and cities.  (See *Young v. Municipal Court* (1971) 16 Cal.App.3d 766, 769–770.)  This case presents one such conflict and requires us to balance state legislation aimed at protecting the rights of sidewalk vendors against the City's interest in implementing regulations directly related to objective health, safety, or welfare concerns.  We begin with an overview of the relevant statutes and ordinances.

### A.     State Sidewalk Vending Legislation

In 2018 the California Legislature passed Senate Bill No. 946, addressing the authority of local municipalities "to adopt requirements for the public safety regulating any type of vending and the time, place, and manner of vending from a vehicle upon a street."  (Legis. Counsel's Dig., Sen. Bill No. 946 (2017–2018 Reg. Sess.).)  In doing so, the Legislature expressly found and declared:

> "(1)    Sidewalk vending provides important entrepreneurship and economic development opportunities to low-income and immigrant communities.
>
> "(2)    Sidewalk vending increases access to desired goods, such as culturally significant food and merchandise.

3

"(3)   Sidewalk vending contributes to a safe and dynamic public space.

"(4)   The safety and welfare of the general public is promoted by encouraging local authorities to support and properly regulate sidewalk vending.

"(5)   The safety and welfare of the general public is promoted by prohibiting criminal penalties for violations of sidewalk vending ordinances and regulations."  (Stats. 2018, ch. 459, § 1(a)(1)-(5).)

Effective January 2, 2019, Government Code sections 51036 through 51039 set forth the scope of permissible regulation of sidewalk vendors by local municipalities.

Government Code section 51036, subdivision (a), defines a " '[s]idewalk vendor' " to mean "a person who sells food or merchandise from a pushcart, stand, display, pedal-driven cart, wagon, showcase, rack, or other nonmotorized conveyance, or from one's person, upon a public sidewalk or other pedestrian path."  Government Code section 51037, subdivision (a) states:  "A local authority shall not regulate sidewalk vendors except in accordance with Sections 51038 and 51039," while also providing an exception for a separate series of health and safety codes relevant to vendors selling food.  (Gov. Code, § 51038, subds. (a), (b).)

Government Code section 51038 sets forth the type and scope of general health, safety, and welfare regulations a local municipality may adopt.  As relevant here, it provides:

> "A local authority shall not require a sidewalk vendor to operate within specific parts of the public right-of-way, *except when that restriction is directly related to objective health, safety, or welfare concerns*."  (Gov. Code, § 51038, subd. (b)(1), italics added.)

4

Moreover,

> "A local authority shall not restrict sidewalk vendors to operate only in a designated neighborhood or area, except when that restriction is directly related to objective health, safety, or welfare concerns." (Gov. Code, § 51038, subd. (b)(1)(4)(A).)

The statute further specifies:

> "For purposes of this section, perceived community animus or economic competition does not constitute an objective health, safety, or welfare concern." (Gov. Code, § 51038, subd. (e).)

Notwithstanding the foregoing, Government Code, § 51038, subdivision (c) states:

> "A local authority may, by ordinance or resolution, adopt additional requirements regulating the time, place, and manner of sidewalk vending if the requirements are directly related to objective health, safety, or welfare concerns, including, but not limited to, any of the following:

> "(1)    Limitations on hours of operation that are not unduly restrictive.  In nonresidential areas, any limitations on the hours of operation for sidewalk vending shall not be more restrictive than any limitations on hours of operation imposed on other businesses or uses on the same street.

> "(2)    Requirements to maintain sanitary conditions.

> "(3)    Requirements necessary to ensure compliance with . . . disability access standards.

> "(4)    Requiring the sidewalk vendor to obtain from the local authority a permit for sidewalk vending or a valid business license, [so long as the local authority does not require a social security number, and keeps certain other required information confidential].

> "(5)    Requiring the sidewalk vendor to possess a valid California Department of Tax and Fee Administration seller's permit.

"(6)  Requiring additional licenses from other state or local agencies to the extent required by law.

"(7)  Requiring compliance with other generally applicable laws.

"(8)  Requiring a sidewalk vendor to submit [certain specified] information on his or her operations . . . ."

Government Code section 51039, subdivision (a)(1) sets forth the penalties that a municipality may impose if a vendor violates its local regulations.  A first violation is punishable by a fine not to exceed $100, a second violation is punishable by a fine not to exceed $200, and additional violations within one year are punishable by a fine not to exceed $500.  It further provides:

> "A local authority may rescind a permit issued to a sidewalk vendor for the term of that permit upon the fourth violation or subsequent violations."  (Gov. Code, § 51039, subd. (a)(2).)

> "Failure to pay an administrative fine pursuant to subdivision (a) shall not be punishable as an infraction or misdemeanor.  Additional fines, fees, assessments, or any other financial conditions beyond those authorized in subdivision (a) shall not be assessed."  (Gov. Code, § 51039, subd. (c).)

## B.  San Diego Municipal Code

In 2022, following the state Legislature's implementation of Senate Bill No. 946, the City passed a set of "Sidewalk Vending Regulations," (San Diego Mun. Code § 36.0101 et seq.)[1] "to provide for the regulation of sidewalk vendors on public property pursuant to California Government Code sections

---

1      Further unspecified statutory references are to the San Diego Municipal Code.

6

51036 through 51039."[2]  (§ 36.0101.)  The City amended certain provisions of the code in 2024 and, as relevant here, added stricter enforcement and impounding provisions.[3]

Current section 36.0103 requires all vendors to have a valid vending permit, and subdivision (g)(1) requires any individual receiving such a permit to agree to:

> "waive and release the City and its officers, agents, employees, contractors, and volunteers from and against any and all claims, costs, liabilities, expenses, or judgments including attorney fees and court costs arising out of any *vending* activities or any illness or injury resulting therefrom, and shall agree to indemnify and hold harmless the City, its officers, agents, employees, contractors, and volunteers from and against any and all such claims, whether caused by negligence or otherwise, except for illness and injury resulting directly from gross negligence or willful misconduct on the part of the City, its officers, agents, employees, contractors and volunteers."  (§ 36.0101, subd. (g)(1).)

Section 36.0105 addresses sidewalk vending generally and states that vending may occur on residential blocks between 7:00 a.m. and sunset, and on non-residential blocks "between the hours of 6:00 a.m. and 10:00 p.m. or the hours of operation imposed on other businesses on the same block, whichever is least restrictive."  (§ 36.0105, subds. (b), (c).)

---

2      We hereby grant the City's unopposed request to take judicial notice of these sections of the San Diego Municipal Code, and other materials related to Petco Park, filed August 7, 2025.  (Evid. Code § 452, subds. (b), (c), (h).)

3      (See Ordinance No. O-21775 (N.S.) [as of January 22, 2026], archived at <https://perma.cc/U7XS-LR9U>.)

Section 36.0106, subdivision (a)(6) precludes vendors from stopping or making sales in "the Ballpark District during an event or game or within three hours before or one hour after an event or game." The Ballpark District is defined in section 59.0102 as "that territory lying from Harbor Drive to Sixth Avenue to Market Avenue; thence from Market Avenue to 14th Street; thence from 14th Street to Commercial Street; and thence from Commercial Street in a line directly west to Harbor Drive. The Ballpark District territory includes street areas and all adjacent sidewalks within these boundaries. The Ballpark District is shown in Figure 1 of Chapter 5, Article 9, Division 3 of this Code." (§§ 59.0102; 36.0102 ["Ballpark District has the same meaning as in section 59.0102 of this Code].) Figure 1 of chapter 5, article 9, division 3 is set forth below and, as depicted, covers approximately 40 city blocks including and surrounding Petco Park:

**FIGURE 1**



Section 36.0110 addresses penalties and fines and mirrors those set forth in Government Code section 51039. However, section 36.0111, titled "Impounding of Vending Equipment," states that "[t]he City may [also] impound *vending equipment* and any *goods* therein," for any one of several enumerated reasons.

### C.    Mustaqeem's Complaint

In the operative first amended verified petition and complaint (the Complaint) Mustaqeem asserts the City's municipal code conflicts with the state sidewalk vending regulations set forth in the Government Code.

Mustaqeem alleges that he has operated a business that "consists of setting up a small snack table near Petco Park for a few hours before Padres games, and occasionally at other events, like Comic-Con. This business provides the primary source of income for Mr. Mustaqeem's family." Mustaqeem has a valid vending permit, and "has been setting up in the same manner and at the same locations since 2009. It was not until recently that the City has told him he cannot setup there," at least not during the period from three hours before until one hour after a game at Petco, which is when people are generally in the area.

On or about June 24, 2024, Mustaqeem received a citation for violating section 36.0103, subdivision (a)[4], which he characterizes as "a catchall

---

4    Section 36.0103, subdivision (a) provides: "No *vending* shall take place except in accordance with the provisions of this Division or when otherwise authorized by the City."

10

provision," and section 36.0107, subdivision (g)(1)[5], which he characterizes as "a provision related to Balboa Park." On or about July 5, and July 6, 2024, Mustaqeem received two more citations for violating section 36.0107, subdivision (g)(1). Mustaqeem was not vending in Balboa Park on any of the foregoing dates. The citations are attached as exhibits to the Complaint and, on each, the word "ballpark" is written in as the "prohibited" area. In addition, the citations include instructions for Mustaqeem to leave or stop vending in the Ballpark District.

On July 9, 2024 Mustaqeem received a citation for violating section 36.0106, subdivision (a)(6), which precludes vending in the Ballpark District three hours before or one hour after an event or game.

In addition to the foregoing citations, the City impounded all of Mustaqeem's product, along with an envelope containing over $1,200 in cash, on July 6, 2024, and impounded all of his product a second time on July 9, 2024. Between the two impoundments, Mustaqeem alleges the City has seized a total of $5,000 from him in product and money. He alleges further that he has lost approximately $17,000 in income, by virtue of not being allowed to vend during games at Petco.

In the Complaint, Mustaqeem alleges the Ballpark District restrictions are irrational and are not uniformly applied to other businesses nearby, including 7-Eleven, which also sells packaged foods before and after games and events at Petco. Based on the foregoing allegations, Mustaqeem asserts

---

5       Section 36.0107, subdivision (g)(1), states "*Vending* activities are prohibited in the following locations in Balboa Park:  within 25 feet of: [certain enumerated plazas, roadways, covered walkways, and pavilions]."

11

causes of action for a writ of mandate "directing the City to withdraw, and cease enforcement of, all provisions of law that violate" the state sidewalk vending regulations; for injunctive relief cancelling and expunging all past citations and returning all penalties and fines and all seized and impounded property; and, for declaratory relief.

### D.    Mustaqeem's Request for Preliminary Injunction

In November 2024, Mustaqeem filed a motion for preliminary injunction, which mirrors and relies upon the allegations in the Complaint.

Mustaqeem made four specific allegations regarding the legality of the City's municipal code in his motion for preliminary injunction.  He asserted:

1. Section 36.0103, subdivision (g) improperly requires indemnification as a condition to obtaining a permit;

2. Sections 36.0106 and 36.0107 effectively create a ban on sidewalk vending within the City, in contravention of Government Code section 51038;

3. Section 36.0106, subdivision (a)(6) imposes a limitation on the hours of operation in the Ballpark District that is more restrictive than any limitations on hours of operation imposes on other businesses or uses on the same street in direct violation of Government Code section 51038, subdivision (c)(1); and

4. Section 36.0111 improperly punishes vendors with impoundment in direct violation of Government Code section 51039.

He asked the trial court to issue an immediate preliminary injunction preventing the City from enforcing those provisions of the municipal code.

The City opposed the motion.  It argued Mustaqeem had requested the wrong type of mandamus relief in the Complaint, that he had failed to exhaust his administrative remedies, and that its sidewalk vending ordinances do not conflict with the relevant state sidewalk vending statutes.

12

### E. Trial Court's Ruling on the Request for Preliminary Injunction

After hearing argument, the trial court denied Mustaqeem's motion for preliminary injunction. The trial court first rejected the City's arguments regarding mandamus relief and exhaustion. The court then stated that it was not persuaded Mustaqeem demonstrated a sufficient probability that he will prevail on the merits.

The trial court explained:

> "[Mustaqeem's] entire action is based upon the City's ordinance conflicting with Government Code [section] 51036 et seq., claiming it improperly imposes time and place restrictions on sidewalk vendors. The Government Code provisions [Mustaqeem] claims are violated by the City's ordinance, however, explicitly provide that cities may impose time, place, and other restrictions on sidewalk vendors that are: (1) directly related to objective health, safety, or welfare concerns; (2) necessary to ensure the public's use and enjoyment of recreational opportunities, and (3) necessary to prevent an undue concentration of commercial activity that unreasonably interferes with the scenic character of the park. (See [Gov.] Code § 51038[, subd.] (b) and (c).) The challenged restrictions are primarily targeted at limiting sidewalk vendors during high-traffic times and around high traffic places. While [Mustaqeem] contends that such a time restriction is prohibited by subsection (1), which states that 'any limitations on the hours of operation for sidewalk vending shall not be more restrictive than any limitations on hours of operation imposed on other businesses or uses on the same street,' the Court is not convinced this prohibition should be construed so broadly, as it would largely invalidate the very type of limited restrictions that are allowed under the statute to protect the public's health, safety and welfare. (See *People v. Mendoza* (2000) 23 Cal.4th 896, 907–908 [in interpreting a statute a court must 'avoid a construction that would produce absurd consequences, which we presume the Legislature did not intend.'].)"

13

Turning to the balance of harms, the trial court concluded: "While the Court does not discount the potential negative impact on [Mustaqeem's] livelihood, considering the potential interim harm posed to the City and the public by preventing the City from enforcing its current restrictions that appear related to public health, safety and welfare, along with the questionable likelihood of [Mustaqeem] prevailing on the merits, the Court finds the equities favor the City."

Mustaqeem filed a timely notice of appeal.

## II.    DISCUSSION

Mustaqeem raises the same four arguments on appeal that he did in the trial court. He asserts the trial court's legal reasoning was flawed, and that the court's denial of his request for a preliminary injunction was based on errors of law and misapplication of the relevant statutes.

### A.    Standard of Review

"As its name suggests, a *preliminary* injunction is an order that is sought by a plaintiff *prior to a full adjudication of the merits of its claim*." (*White v. Davis* (2003) 30 Cal.4th 528, 554 (*White*).) "[T]he question whether a preliminary injunction should be granted involves two interrelated factors: (1) the likelihood that the plaintiff will prevail on the merits, and (2) the relative balance of harms that is likely to result from the granting or denial of interim injunctive relief." (*Ibid.*) " 'The ultimate goal . . . is to minimize the harm which an erroneous interim decision may cause.' " (*Ibid.*, italics omitted.) The party seeking injunctive relief has the burden to show all elements necessary to support the issuance of a preliminary injunction. (*O'Connell v. Superior Court* (2006) 141 Cal.App.4th 1452, 1481.)

"Generally, the ruling on an application for a preliminary injunction rests in the sound discretion of the trial court. The exercise of that discretion

14

will not be disturbed on appeal absent a showing that it has been abused." (*Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 286 (*Cohen*).) However, "[t]he abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711.) We accept the factual findings of the trial court so long as they are supported by substantial evidence and independently review the trial court's conclusions based on matters of pure law. (*Smith v. Adventist Health System/West* (2010) 182 Cal.App.4th 729, 739.)

We also recognize that the trial court abuses its discretions if it applies the wrong legal standard. (*Zurich American Ins. Co. v. Superior Court* (2007) 155 Cal.App.4th 1485, 1493.) Likewise, "[w]here the 'likelihood of prevailing on the merits' factor depends upon a question of law rather than upon evidence to be introduced at a subsequent full trial, the standard of review is not abuse of discretion but whether the superior court correctly interpreted and applied statutory law, which we review de novo." (*Efstratis v. First Northern Bank* (1997) 59 Cal.App.4th 667, 671–672; *Doe v. Brown* (2009) 177 Cal.App.4th 408, 417 ["We apply the de novo standard of review to this claim, since the claim raises an issue of statutory interpretation"].)

Under well-settled principals of statutory interpretation, our fundamental task in interpreting a given statute is to determine the Legislature's intent and effectuate the law's purpose. (*People v. Lewis* (2021) 11 Cal.5th 952, 961.) We begin with the language of the statute itself. (*Ibid.*) We give the words their plain and commonsense meaning, while also considering the context and framework of the entire statutory scheme and keeping in mind its nature and purpose. (*Ibid.*) "If the words in the statute do not, by themselves, provide a reliable indicator of legislative intent,

'[s]tatutory ambiguities often may be resolved by examining the context in which the language appears and adopting the construction which best serves to harmonize the statute internally and with related statutes.' " (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1126.) We do not interpret the statute so literally as to contravene the apparent legislative intent, " ' "and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed." ' " (*Ibid*.)

## B.     Probability of Success on the Merits

We begin with the probability of success on the merits, which was the focus of the trial court's ruling, and the briefing on appeal.

As an initial matter, we note that Mustaqeem has raised four independent assertions regarding the scope of the City's restrictions on sidewalk vending, both in the trial court and on appeal. In its written ruling denying the motion for preliminary injunction, the trial court characterized these assertions as a single argument—that the City improperly imposes time and place restrictions on sidewalk vendors—and, as a result, provided little to no analysis on at least some of the underlying assertions, including, most notably, that the City's impoundment of vendor property based on alleged violations of its time and space restrictions violates Government Code section 51039. We address each of Mustaqeem's four assertions in turn, beginning with section 36.0111, which permits the City to impound vendor equipment and/or goods in certain circumstances.

### 1.     Impoundment of Vendor Property

Mustaqeem asserts section 36.0111 runs afoul of Government Code section 51039 by allowing the City to impound a sidewalk vendors equipment and/or goods based on violations of the City's sidewalk vending regulations. The trial court did not directly address this assertion, and instead

16

characterized Mustaqeem's "entire action" as claiming the City "improperly imposes time and place restrictions on sidewalk vendors."

Government Code section 51039 is unambiguous. "A violation of a local authority's sidewalk vending program that complies with Section 51038 is punishable *only*" by the enumerated monetary fines or the recission of the vendor's permit. (Gov. Code § 51039, subd. (a), italics added.) Section 51039, subdivision (c) states, further, "Failure to pay an administrative fine pursuant to subdivision (a) shall not be punishable as an infraction or misdemeanor. Additional fines, fees, assessments, *or any other financial conditions* beyond those authorized in subdivision (a) *shall not be assessed*." (Italics added.) Section 51039 does not authorize impoundment of a vendor's equipment and/or goods for any reason.

Individuals have a constitutional possessory interest in their property, and, while the impounding of a vendor's equipment and/or goods may not be directly equivalent to a fine, fee, or assessment, it certainly has financial impacts on the vendor. (See, e.g., *Lavan v. City of Los Angeles* (2012) 693 F.3d 1022, 1028–1029 [homeless individuals have possessory interest in their personal unabandoned property]; *Alviso v. Sonoma County Sheriff's Dept.* (2010) 186 Cal.App.4th 198 [discussing financial impact of impounding vehicles]; *Coalition on Homelessness v. City and County of San Francisco* (2023) 93 Cal.App.5th 928, 946 [impoundment is "a significant intrusion on property rights that may seriously impact the lives of the owners"].) Reading section 51039 in its entirety, we see no indication that the Legislature intended to permit local authorities to impound vendor equipment and/or goods based solely on a violation of local health, safety, or welfare ordinances. (See Sen. Com. on Governance and Finance, Bill Analysis on Sen. Bill No. 946, Apr. 18, 2018, p. 6 ["This means local governments can't seize property

17

or use other stronger means in those limited cases where it's warranted"].) Rather, the Legislature was quite clear that violations of a local authority's sidewalk vending regulations are punishable *only* by the enumerated monetary fines or the recission of the vendor's permit. (Gov. Code § 51039, subd. (a), italics added.)

Section 36.0110 of the City's sidewalk vending regulations mirrors the penalties set forth in Government Code section 51039.

However, subdivision (a) of section 36.0111 expands the available penalties and states: "The City may impound *vending equipment* and any *goods* therein, for any of the following reasons:

"(1) leaving *vending equipment* or *goods* unattended in violation of section 36.0105(k);

"(2) *vending* prohibited *goods* in violation of section 36.0109;

"(3) *vending* without a valid *vending permit* in violation of section 36.0110(b);

"(4) *vending* food without a valid and displayed San Diego County Environmental Health Permit in violation of section 36.0105(h);

"(5) *vending* in violation of this Division and the *sidewalk vendor* refuses or fails to provide identification upon request by an Enforcement Official;

"(6) *vending* in apparent violation of this Division and the *sidewalk vendor* refuses or fails to remove the *vending equipment* from the *sidewalk*, *park*, or other property within 30 consecutive minutes after being instructed to do so by an Enforcement Official;

"(7) *vending* in a manner that blocks or obstructs the free movement of pedestrians or other traffic on *sidewalks* and fails to maintain a minimum of 48 inches of accessible path of travel in violation of section 36.0105(m);

18

"(8) *vending* in a manner that creates an imminent and substantial danger or environmental hazard to the health, safety, or general welfare of the public or the property at the location of the vending equipment. . . ; or

"(9) *vending* by a *sidewalk vendor* who has, within a 24-month period, been issued three or more administrative citations for violations of this Division." (§ 36.0111, subd. (a)(1-9).)

Several of these subdivisions are in direct contravention to Government Code section 51039.

First, Government Code section 51039, subdivision (a)(1) allows *only* an administrative fine of $100 for a first violation of a local authority's sidewalk vending program, but at least some of the provisions of section 36.0111 allow the City to impound a vendor's equipment and/or goods based solely on a first violation. For example, section 36.0110, subdivision (a)(7) allows the City to impound a vendor's product and/or equipment if they do not maintain the 48-inch open pathway specified in section 36.0105, subdivision (m), regardless of whether the vendor has had any previous violations. In addition, section 36.0110, subdivision (a)(8) broadly allows the City to impound a vendor's equipment and/or goods based on a single violation of virtually any regulation, insofar as all the City's regulations are necessarily based on "health, safety, or general welfare concerns." (See Gov. Code § 51038, subd. (a)(1) ["A local authority shall not require a sidewalk vendor to operate within specific parts of the public right-of-way, except when that restriction is directly related to objective health, safety, or welfare concerns."].)

19

Second, section 36.0111, subdivision (a)(3) allows the City to impound both goods and equipment for vending without a valid vending permit,[6] in direct contravention of Government Code section 51039, subdivision (a)(3), which sets forth specifically enumerated administrative fines for vending without a valid permit. Government Code section 51039, subdivision (a)(3) does not permit impoundment for any reason, and instead permits *only* administrative fines, which can be reduced if the vendor provides proof of a valid permit. (Gov. Code § 51039, subd. (a)(3)(A)–(B).)

Third, section 36.0111, subdivision (a)(9) allows the City to impound a vendor's equipment and/or goods after three or more administrative citations, in direct contravention of Government Code section 51039, subdivision (a)(2), which states that "local authority may rescind *a permit* issued to a sidewalk vendor for the term of that permit upon the fourth violation or subsequent violations." (Italics added.) Impoundment of a vendor's equipment and/or goods is a different punishment than rescinding their vending permit.

Here, Mustaqeem alleges that the City seized approximately $5,000 worth of product and money from him, on top of any administrative fines associated with the citations he received. There is no suggestion in the record that Mustaqeem presented a serious or particularized risk to the health, safety, or welfare of others when the two impoundments occurred. Nor does section 36.0111, as written, require the presence of any such emergent risk. As the Legislature acknowledged, sidewalk vending provides

---

6      The City attempts to conflate a "valid vending permit" with a food facility permit, as discussed in Health & Safety Code section 114831, but we note that there is no reference to food or Health & Safety Code section 114831 in section 36.0111, subdivision (a)(3).

20

important economic opportunities to low-income individuals. (Stats. 2018, ch. 459, § 1.) Government Code sections 51038 and 51039 aim to protect such vendors, in part by limiting the penalties a local authority can assess. The City fails to acknowledge those limitations.

Instead, the City asserts it may impose the additional punishment of impoundment based on a general provision in Government Code section 51037, subdivision (b), which states, "Nothing in this chapter shall be construed to affect the applicability of Part 7 (commencing with Section 113700) of Division 104 of the Health and Safety Code to a sidewalk vendor who sells food." But there is nothing in the record to suggest that the City's reason for impounding Mustaqeem's supplies had anything to do with food safety. (See, e.g., Health & Safety Code § 114393 [food and equipment suspected of being unsanitary or contaminated may be impounded].) To the contrary, Mustaqeem asserts he sold only pre-packaged goods. The City does not dispute that claim.

Regardless, the various provisions of section 36.0111 set forth above are not limited to food safety; indeed, only subdivision (a)(4) mentions food. And here, the City acknowledges the citation indicates Mustaqeem's inventory was impounded based on section 36.0111, subdivision (a)(9), which allows impoundment after "three or more administrative citations for violations" of

the City's vending regulations.  That provision directly contravenes Government Code section 51039, subdivisions (a) and (c).[7]

Next, the City asserts that Government Code section 51038, subdivision (b)(2)(B) gives local municipalities the authority to impound a sidewalk vendor's equipment and/or goods following multiple regulation violations.  This argument is both misplaced and circular.  First, the argument is misplaced because Government Code section 51038, subdivision (b)(2)(B) applies to "vending *in a park owned or operated by the local authority*."  (Italics added.)  Although some of the citations Mustaqeem received cite to a provision governing vending in Balboa Park, others refer to the Ballpark District, which is *not* a park owned or operated by the City.  Further, the City does not dispute Mustaqeem's assertion that he was not vending in Balboa Park on any of the relevant occasions.

Moreover, Government Code section 51038, subdivision (b)(2)(B), and the other similar subdivisions of Government Code section 51038, allow local authorities to make *regulations* based on objective health, safety, or welfare

---

7    At oral argument, the City indicated impoundment aids in the enforcement of the administrative fines otherwise permitted by Government Code section 51039.  The City attempted to minimize the financial impact of impoundment by asserting that a vendor can retrieve impounded items at any time, by showing identification and proof that they have paid any outstanding fines.  Notably, though, section 36.0111, subdivision (c) allows the City to immediately dispose of perishable goods, and section 36.0111, subdivision (f) states items will be released "provided that proper proof of ownership is presented, *and the City receives payment in full of all administrative costs incurred as a result of the violation*."  (Italics added.)  Such payment is a "financial condition" beyond what is permitted by Government Code section 51039, subdivision (a).

concerns, while Government Code section 51039 sets forth the available *punishments* for violations of those regulations. As we have explained, Government Code section 51039 *only* allows the City to issue administrative fines and/or revoke the vendor's vending permit. It does not allow a local authority to impound the vendor's materials, and the City cannot simply refer to its limited authority to *regulate* to expand its otherwise limited authority to *punish*. Doing so would allow a local authority to impose any punishment it desired, so long as the punishment is based on the same objective health, safety, or welfare concerns as the underlying regulations, and would, in turn, render Government Code section 51039 surplusage.

For the foregoing reasons, we conclude that section 36.0111 facially conflicts with Government Code section 51039. The trial court's written ruling does not specifically, or adequately, address Mustaqeem's assertions regarding impoundment under section 36.0111. Based on our de novo review of the underlying statutory analysis issue, we conclude there is a substantial likelihood that Mustaqeem will succeed on the merits of his claim that the City does not have the authority to impound sidewalk vendor equipment and/or goods under section 36.0111. Because the trial court neglected to analyze this specific argument and concluded Mustaqeem "only demonstrated a minimal probability of success on the merits," as to all claims, collectively, the trial court erred as a matter of law.

## 2. Ballpark District Restrictions on Vending Hours

We turn next to Mustaqeem's assertion that section 36.0106, subdivision (a)(6)[8] imposes a limitation on the hours of operation in the Ballpark District that is more restrictive than any limitations on hours of operation imposed on other businesses or uses on the same street in direct violation of Government Code section 51038, subdivision (c)(1).

Government Code section 51038 subdivision (c)(1) allows the City to "adopt additional requirements regulating the time, place, and manner of sidewalk vending if the requirements are directly related to objective health, safety, or welfare concerns," with the caveat in subdivision (c)(1)(A) that: "In nonresidential areas, any limitations on the hours of operation for sidewalk vending shall not be more restrictive than any limitations on hours of operation imposed on other businesses or uses on the same street." Contrary to the plain language of this provision, section 36.0106, subdivision (a)(6) places a direct limitation on the hours that sidewalk vendors can vend within the Ballpark District, by precluding *any* vending "during an event or game or within three hours before or one hour after an event or game." There is no dispute that brick and mortar businesses, including businesses within the Ballpark District like 7-Eleven that sell items similar to Mustaqeem's, do not have any such limitation on their hours of operation.

The trial court acknowledged this specific argument but stated:

> "The Court is not convinced this prohibition should be
> construed so broadly, as it would largely invalidate the very

---

8      Section 36.0106 subdivision (a)(6) prohibits vending in the Ballpark District starting from three hours before an event through one hour after the conclusion of the event.

24

type of limited restrictions that are allowed under the statute to protect the public's health, safety and welfare. (See *People v. Mendoza* (2000) 23 Cal.4th 896, 907–908 [in interpreting a statute a court must "avoid a construction that would produce absurd consequences, which we presume the Legislature did not intend"].)"

But the reverse is also true. The trial court's hesitance to construe Government Code section 51038, subdivision (c)(1)(A) "so broadly" effectively invalidates the plainly stated prohibition against placing more restrictive limitations on the hours of operation on sidewalk vendors as compared to other business, so long as those restrictions meet the "objective health, safety, or welfare" requirement stated elsewhere in the statute. The plain language of the Government Code mandates that a time restriction based on health and safety concerns nonetheless may not be more restrictive that the restrictions on hours of operation for other businesses on the street.

It is apparent from the legislative findings that the Legislature enacted Senate Bill No. 946 to strike a balance between a local authority's interest in protecting the public's health, safety and welfare, and the ability of sidewalk vendors to earn a livelihood while contributing to safe and dynamic public spaces. (See Senate Bill No. 946, Stats. 2018, ch. 459, § 1.) We cannot simply ignore Government Code section 51038, subdivision (c)(1) by reading the more general "health, safety and welfare" provisions so broadly as to render this specific prohibition meaningless. Rather, we must abide by the "elementary tenet of statutory construction that 'where there is no clear intention otherwise, a specific statute will not be controlled . . . by a general one.'" (*Guidry v. Sheet Metal Workers Nat. Pension Fund* (1990) 493 U.S. 365, 375; see also *Mitchell v. Superior Court* (1989) 49 Cal.3d 1230, 1250).

Consequently, Government Code section 51038, subdivision (c)(1)(A) creates a *separate* restriction on the City's ability to regulate sidewalk

25

vending, above and beyond the requirement that restrictions be based on health, safety or welfare, and specifically requires that any limitation on the hours of operation be "not unduly restrictive" and not "more restrictive than any limitations on hours of operation imposed on other businesses or uses on the same street." Again, we cannot simply ignore this language in favor of the broader "objective health, safety, or welfare concerns" requirement found elsewhere in the same statute.

Addressing Government Code section 51038, subdivision (c)(1) more specifically, the City asserts that sidewalk vendors are categorically different from brick and mortar business as they contribute to congestion on the sidewalk around Petco. While this may be true, Government Code section 51038, subdivision (c)(1)(A) nevertheless precludes the City from placing "limitations on the hours of operation for sidewalk vending [that are] more restrictive than any limitations on hours of operation imposed on other businesses or uses on the same street." Certainly, the Legislature recognized the differences between sidewalk vendors and brick and mortar businesses when including this provision in Senate Bill No. 946.

The City asserts Government Code section 51038, subdivision (c)(1) allows it to place "[l]imitations on hours of operation that are not unduly restrictive," but neglects to acknowledge that the phrase "unduly restrictive" must be read in context with the provision that immediately follows, stating that any limitation in nonresidential areas cannot be more restrictive than those imposed on other businesses on the same street. Reading the entire subdivision in context, it is apparent that the City may restrict the hours of vending in residential areas and may also restrict the hours of vending in non-residential areas so long as those restrictions are not more restrictive

26

that the limitation on hours of operation of other businesses on the same street.[9]

The City maintains that section 36.0106, subdivision (a)(6) is an appropriate "time, place, and manner" restriction "created to deal with the problems of accommodating and moving large masses of people to and from Petco Park on a regular basis." This more general language raises another issue—separate from the hours-based restriction—regarding the breadth of the Ballpark District. We believe that issue is more appropriately handled on remand, with the benefit of the full records as it now stands. However, we provide some guidance here, to the extent it is helpful to the trial court's continued analysis.

Based on the record as it stands on appeal, the City has not adequately explained the direct and objective health, safety, or welfare concerns that justify additional restrictions on sidewalk vending in entirety of the 40-block area of the Ballpark District. At most, the City points to the large number of people that attend games and events at Petco Park, but we note that there are numerous other, more targeted provisions that are more narrowly and objectively aimed at ensuring safe passage of pedestrians.

For example, the other subdivisions of section 36.0106 also preclude vendors from stopping or making sales "in the public right-of-way, or any

---

9    To the extent the City asserts the hours for sidewalk vending in the Ballpark District are not more restrictive because other businesses, like bars, are restricted from operating at other hours (2:00 a.m. to 6:00 a.m.), we note that section 36.0105, subdivision (c) also restricts sidewalk vending on non-residential blocks between 10:00 p.m. and 6:00 a.m., or the hours imposed on other businesses on the same block.

area that blocks the safe flow of pedestrians or vehicles;" in a roadway, median, or other area that does not meet the definition of sidewalk; in an area that obstructs a traffic signal or regulatory sign; within 15 feet of any intersection, building entrance, high-traffic sidewalk, loading zone, or high-traffic bike and shared used path; within 50 feet of any major transit stop or another stationary vendor; or within 100 feet of the entrance to a police station, fire station, or hospital, or any sidewalk closure.  (§ 36.0106, subd. (a)(1), (2), (5), (9)-(15).)

In addition, section 36.0105, subdivision (m) states:

> "To maintain accessibility standards, *sidewalk vendors* shall not place or allow any obstruction to be placed on the *sidewalk* that would reduce the width of the *sidewalk* to less than 48 inches excluding the curb, except for the brief duration of time for a *roaming sidewalk vendor* to conduct a sale.  Notwithstanding the foregoing, *sidewalk vendors* shall immediately move to provide access to the *sidewalk* to avoid impeding the flow of pedestrian or other traffic."

Given these specific provisions, it is not enough for the City to simply show that the area around Petco is busy during a game or event.  To be compliant with Government Code section 51038, subdivisions (b)(1) and (c)(1), the City must show the complete ban on vending anywhere in the 40-city block area is "*directly* related to *objective* health, safety, or welfare concerns."  Thus, any restriction must be based on *direct* and *objective* (i.e., known or observable) concerns resulting directly from vendor's presence or conduct during such high-traffic times.  The record before us does not currently establish that sidewalk vendors who follow the narrower and more specific guidelines—such as maintaining a 4-foot pathway on the sidewalk and maintaining the enumerated distances from intersections, transit stops, entrances, and other high-traffic areas—still pose direct and observable health, safety, or welfare concerns simply by being present anywhere within

the expansive Ballpark District during events. Perhaps this issue has been developed in the record now before the trial court.

As a final matter, the City once again relies on Government Code section 51038, subdivision (b)(2)(B), but this particular provision is not relevant here. As we have already explained, Government Code section 51038, subdivision (b)(2)(B) applies only to "vending *in a park owned or operated by the local authority*." The Ballpark District encompasses nearly 40 city blocks, and the vast majority of the area in which vending is prohibited does not fall within a park owned or operated by the City.

Based on the foregoing, we conclude that courts must consider the prohibition on limiting vendors' hours of operation as set forth in Government Code section 51038, subdivision (c)(1)(A), *in addition to* the general "objective health, safety, or welfare concerns" requirement when considering whether an hours-based restriction on sidewalk vending, like the one set forth in section 36.0106, subdivision (a)(6) violates state law. On remand, the trial court may consider any additional evidence now in the record concerning the City's stated objectives and/or any direct connection to objective health, safety, or welfare concerns, as well as evidence of the limits on hours of operation that are imposed on other businesses in the relevant areas. To be clear, we express no opinion on what the City may ultimately be able to prove based on the current state of the record. We defer to the trial court in making factual findings based on that record, but clarify that the City must demonstrate a *direct* relationship to *objective* health, safety, or welfare concerns to justify any restriction on sidewalk vending, and that the court must *also* consider the additional limitation on time restrictions set forth in Government Code section 51038, subdivision (c)(1)(A) when analyzing any specific hours-based restriction.

29

### 3.      Effective Ban on Sidewalk Vending

Mustaqeem also asserts, more generally, that sections 36.0106[10] and 36.0107[11] effectively create a de facto ban on sidewalk vending in the City's most viable commercial areas, in contravention of Government Code section 51038.

Here, Mustaqeem falls short of establishing a likelihood of success on the merits. While we agree that the Ballpark District restrictions may run afoul of Government Code section 51038, subdivisions (a)(1) and (c)(1) for the reasons we have just explained, Mustaqeem has not provided adequate argument or analysis to establish the City's sidewalk vending regulations as a whole effectively preclude vending in any viable area within the City.

Section 36.0106's prohibition on vending in additional areas, such as the Gaslamp Quarter District and the East Village District, may likewise run afoul of Government Code section 51038, subdivision (c)(1). However, Mustaqeem does not make any assertions regarding these specific regions and, instead, contends the regulations amount to a de facto ban on sidewalk vending. We conclude the record before us is not sufficiently developed on this particular argument.

Again, we note that the request for preliminary injunction at issue in this appeal was based on a limited record, and that both parties have likely provided additional evidence and argument related to the pending request for injunctive and declaratory relief. As with the City's defense of the Ballpark District restrictions, we express no opinion regarding what Mustaqeem may

---

10      Section 36.0106 limits vending locations and specifically prohibits vending in the Gaslamp Quarter District and the East Village District.

11      Section 36.0107 limits vending in parks, plazas and beaches.

30

ultimately be able to prove in the larger litigation. Rather, we conclude that in the context of the present appeal, Mustaqeem has not established a likelihood of success on the merits of his claims that the City's sidewalk vending regulations effectively preclude vending in any viable area, or that any single other provision stands in direction conflict with Government Code sections 51037 through 51039.

### 4. Indemnification as a Condition of Permitting

Lastly, Mustaqeem asserts that section 36.103, subdivision (g) violates Government Code section 51038. That Code section requires any individual receiving a sidewalk vending permit to release the City from any liability related to vending activities and to indemnify the City for any claims brought against it related to the vendor's vending activities. We disagree.

As an initial matter, in his opening brief on appeal, Mustaqeem contends that Government Code section 51038, subdivision (d) "prohibits local governments from conditioning sidewalk vending permits on vendors agreeing to release, indemnify, or hold harmless the city from liability." Mustaqeem did not rely on Government Code section 51038, subdivision (d) in the trial court. It is not apparent whether this is typographical error or a new argument on appeal. In any event, Government Code section 51038, subdivision (d) does not limit a local authority's ability to place restrictions or requirements on a sidewalk vendor's permit. To the contrary, it allows a local authority to restrict vending during farmer's markets, swap meets, and other specially permitted events. (§ 51038, subd. (d).)

To the extent Mustaqeem intends to rely on the more general provision of Government Code section 51038, subdivision (b)(1), we are not persuaded that the City's release and indemnification requirements are in conflict with that or other similar provisions. Government Code section 51038,

31

subdivision (b)(1) precludes the City from requiring "*a sidewalk vendor to operate within specific parts of the public right-of-way*, except when that restriction is directly related to objective health, safety, or welfare concerns." (Italics added.) On its face, it applies to restrictions on where and when a vendor may operate, not on the City's ability to insulate itself from claims arising from a vendor's operations.

As the City points out, it has long been accepted that sidewalk vendors "operate within the narrow exception to the general rule that an individual has no duty to exercise ordinary care to render safe property over which he or she has no right of possession or control." Because sidewalk vendors sell their wares on public streets, it is appropriate for the City to require them to mitigate any potential liability associated with their commercial activities. (See, e.g., *Owens v. Kings Supermarket* (1988) 198 Cal.App.3d 379, 387 [discussing the sidewalk vendor exception to liability for injuries occurring on public streets].) We see nothing in Government Code section 51038 negating this recognized exception, or otherwise precluding the City from requiring sidewalk vendors to release and indemnify it as a condition of permitting.

## C.    Balancing of Harms

Having now addressed Mustaqeem's assertions regarding the trial court's error in assessing his likelihood of success on the merits, we turn to the second part of the preliminary injunction analysis: the balance of harms that is likely to result from the issuance or denial of a preliminary injunction. (See *White, supra,* 30 Cal.4th at p. 554.)

Mustaqeem asserts, as he did in the trial court, that immediate relief is necessary to prevent irreparable harm to his sidewalk vending business and statutory rights. More specifically, with respect to his first assertion regarding impoundment, he asserts the City's seizure of "over $1,200 in cash

from [him], alongside his entire inventory, caus[ed him] substantial and immediate harm." The trial court acknowledged "the potential negative impact on [Mustaqeem's] livelihood," but also noted "the potential interim harm posed to the City and the public by preventing the City from enforcing its current restrictions that appear related to public health, safety and welfare." Because the trial court had concluded that Mustaqeem had not established a likelihood of success on the merits, it found the potential harms were not sufficient to justify the requested preliminary injunction and denied his motion.

Having now concluded that the trial court erred in its analysis of the underlying statutes and, therefore, its conclusion that Mustaqeem had not established a likelihood of success on the merits, we remand the matter to the trial court for further proceedings consistent with this opinion. Although our review of the legal issues underlying the merits is de novo, the trial court retains discretion in weighing the likelihood of success on the merits against the relative harms, which the trial court has already acknowledge exist on both sides. (See *Cohen, supra,* 40 Cal.3d at p. 286; *Tulare Lake Canal Co. v. Stratford Public Utility Dist.* (2023) 92 Cal.App.5th 380, 417 ["In the typical case, the balancing of relative harms, which involves the exercise of discretion, is best completed in the first instance by the trial court rather than a court of review."].)

## III. DISPOSITION

The order denying Mustaqeem's motion for a preliminary injunction is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion. Mustaqeem is entitled to costs on appeal.

KELETY, J.

WE CONCUR:

O'ROURKE, Acting P. J.

BUCHANAN, J.